UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESHAWN STARKS,

    Petitioner,

v.

SHERRY BURT,

    Respondent.
_____/

Case No. 2:17-cv-10622

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

    Michigan prisoner Deshawn Starks seeks a writ of habeas corpus on the grounds that he is being held in violation of his constitutional rights. He pleaded no contest to three counts of first-degree criminal sexual conduct in the Wayne County Circuit Court and in 2014 he was sentenced to concurrent terms of 45 to 90 years imprisonment. In his petition, he challenges the voluntariness of his plea and the effectiveness of trial counsel. For the reasons below, the Court will deny the petition for a writ of habeas corpus, deny a certificate of appealability, and deny leave to proceed in forma pauperis on appeal.

I.    Facts and Procedural History

    Starks's convictions arise from his sexual assaults upon three different women in Detroit, Michigan in 2003. DNA evidence linked Starks to all three crimes. He was charged with multiple offenses arising from the incidents, as well as a fourth incident, and the case was assigned to Wayne County Circuit Judge Timothy Kenny. During a pre-trial conference before Wayne County Circuit Court Judge Michael Hathaway on February 18, 2014, the prosecution offered Starks a plea bargain: he would plead guilty

to three counts of first-degree criminal sexual conduct in exchange for the dismissal of the other charges and a sentencing agreement of 28 to 50 years imprisonment. Starks declined the offer and confirmed his decision on the record. *See* 2/18/14 Pre-Trial Hrg. Tr., pp. 4–6 (ECF 10-6, PgID 114–16). Defense counsel stated on the record that Starks had previously declined a plea bargain before Judge Kenny in which he would plead guilty to three counts of first-degree criminal sexual conduct in exchange for dismissal of the other charges and a sentencing agreement of 30 to 50 years imprisonment. *Id.* at 6 (PgID 116). On February 19, 2014, the day set for trial, Starks pleaded no contest to three counts of first-degree criminal sexual conduct in exchange for the dismissal of the other charges, but with no sentencing agreement. *See* 2/19/14 Plea Hrg. Tr., pp. 3–17 (ECF 10-7, PgID 120–134). During those proceedings, the trial court advised Starks that the first-degree criminal sexual conduct convictions could result in a life sentence and that he was subject to a habitual-offender enhancement which might increase the guideline range for his minimum sentence. *Id.* at 5 (PgID 122). The trial court advised Starks about the details of the plea agreement. Starks confirmed that he understood the terms of the agreement and that no other promises had been made to him. *Id.* at 6–8 (PgID 123–25). Starks acknowledged that it was his decision to tender the plea and that no one had coerced him into doing so. *Id.* at 10–11 (PgID 127–28).

On March 10, 2014, the trial court conducted a sentencing hearing. At that hearing, the trial court determined that the minimum sentence guideline range was 270 to 675 months for one count and 270 to 900 months for the other two counts. *See* 3/10/14 Sent. Hrg. Tr., pp. 13–14, 16 (ECF 10-8, PgID 150–51, 153). The prosecution requested a minimum sentence at the top of the guideline range (75 years). *Id.* at 17–18

2

(PgID 154–55). Defense counsel requested a minimum sentence near the bottom of the guideline range (30 years). *Id.* at 20 (PgID 157). Starks had the opportunity to speak on his own behalf, but declined to do so. *Id.* The trial court then sentenced Starks to concurrent terms of 45 to 90 years imprisonment. *Id.* at 22–23 (PgID 159–60). No objections were made.

Six months later, Starks moved for re-sentencing and an evidentiary hearing asking, in relevant part, that he be given the 28-year minimum sentence that he had rejected and asserting that defense counsel was ineffective for advising him to reject that offer. The trial court denied the motions as to this claim finding that Starks had rejected the plea offers with the sentencing agreements, that he had stated under oath that he understood the terms of his actual plea agreement, and that he had confirmed that no other promises or threats had induced him to tender his plea. *See* 10/3/14 Motion Hrg. Tr., pp. 18–20 (ECF 10-9, PgID 179–81).[1]

Starks filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied for lack of merit in the grounds presented as to his habeas claim. *People v. Starks*, No. 324220 (Mich. Ct. App. March 19, 2015) (unpublished). Starks also filed an application for leave to appeal with the Michigan Supreme Court, which the court denied as to his habeas claim. *People v. Starks*, 499 Mich. 878, 876 N.W.2d 536 (2016).

Starks thereafter filed his federal habeas petition. He raises the following claim:

> Due process requires reinstating a favorable plea offer with a 28 to 50-year sentencing agreement where defense counsel advised him that he would receive a better deal in front of the assigned trial judge; he rejected

---

[1] Petitioner raised other sentencing issues in his motions. Those matters have been resolved in the state courts and are not relevant to his current habeas petition.

the offer and pleaded no contest the following day before the trial judge, and thereafter received a 45 to 90-year sentence.

ECF 1, PgID 5–6. Respondent has filed an answer to the petition contending that it should be denied for lack of merit. ECF 9.

II. <u>Standard of Review</u>

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529

4

U.S. at 413). For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous; the application must have been "objectively unreasonable." *Wiggins*, 539 U.S. at 520–21. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n.7 and *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam), respectively).

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A habeas

petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412. And § 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits,'" *Harrington*, 562 U.S. at 100, nor does it "require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them," *Early v. Packer*, 537 U.S. 3, 8 (2002). Although Supreme Court precedent determines the requirements of "clearly established law," the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Lastly, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

In this case, the state trial court denied the re-sentencing motion as to Starks' habeas claim on the merits. The Michigan Court of Appeals denied leave to appeal for lack of merit on the grounds presented as to his habeas claim and the Michigan

6

Supreme Court denied leave to appeal as to his habeas claim in a standard order. For the reasons that follow, the state courts' decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[2]

III. Analysis

Starks essentially asserts that he is entitled to habeas relief because his no-contest plea was involuntary and defense counsel was ineffective for advising him to reject a more favorable plea and sentencing agreement.

When a criminal defendant is convicted pursuant to a plea, habeas review is limited to whether the plea was made knowingly, intelligently, and voluntarily. *Fitzpatrick v. Robinson*, 723 F.3d 624, 639 (6th Cir. 2013) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Brady,* 397 U.S. at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Id.* at 755. The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

In this case, the state court record reveals that Starks's plea was knowing, intelligent, and voluntary. Starks was 32 years old at the time of his plea and was familiar with the criminal justice system as a repeat offender. There is no evidence that

---

[2] The Court would reach the same result under a de novo standard of review.

7

he suffered from any physical or mental problems that would have impaired his ability to understand the criminal proceedings or the nature of his plea. Starks was represented by legal counsel and conferred with counsel during the plea process. The trial court advised Starks of his trial rights and the fact that he would be giving up those rights by pleading no contest. The parties discussed the charges, the terms of the plea agreement, and the potential sentencing consequences of the plea. Starks indicated he understood the plea agreement, that he wanted to plead no contest, that he had not been threatened or promised anything other than what was included in the plea agreement, and that he was pleading no contest of his own free will. Starks fails to show that his plea was involuntary. The fact that he was subsequently dissatisfied with his plea or may have hoped for more lenient treatment does not render his plea unknowing or involuntary. *See id.* at 757.

There is also no evidence of coercion. The parties and the trial court discussed the terms of the plea agreement and its consequences at the plea hearing. Starks confirmed that he understood what he was doing and that it was his desire to plead no contest to three counts of first-degree criminal sexual conduct in exchange for the dismissal of other charges without a sentencing agreement. He is bound by those statements. As aptly stated by the United States Court of Appeals for the Sixth Circuit when faced with a challenge to a plea bargain based upon an alleged off-the-record agreement:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before

us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). The plea colloquy shows that Starks pleaded no contest of his own free will.

Starks also fails to show that defense counsel was ineffective in advising him during the plea proceedings. The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a plea on the ground that he or she was denied the Sixth Amendment right to the effective assistance of counsel. First, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57–58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). To demonstrate that counsel's performance fell below this standard, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, if the petitioner satisfies the first prong of this test, the petitioner must then demonstrate that counsel's performance resulted in prejudice, *i.e.*, "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Supreme Court has explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id*. The Supreme Court has also emphasized that "these predictions of the outcome at a possible trial, where necessary, should be made

objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 59–60 (quoting *Strickland*, 466 U.S. at 695).

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Additionally, the Supreme Court has emphasized the extraordinary deference to be afforded trial counsel in the area of plea bargaining. *See Premo v. Moore*, 562 U.S. 115, 125 (2011) (stating that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage").

Starks fails to establish that defense counsel was ineffective. The record indicates that Starks was aware of the plea offers containing the sentencing agreements and that he personally rejected both of those offers during the pre-trial period. His claim that counsel advised him to reject the plea offer made before Judge Hathaway with the 28- to 50-year sentence makes no sense given that the prior plea offer before Judge Kenny was for a 30- to 50-year sentence. Counsel would have no reason to believe that Starks could receive a better offer than the 28- to 50-year sentence, particularly so close to the start of trial. Moreover, counsel clearly, and reasonably, believed that a

28-year or 30-year minimum sentence was fair (and would have been part of a favorable sentencing agreement) given that he advocated for a 30-year minimum sentence at the sentencing hearing. Starks fails to establish that defense counsel misadvised him or promised him a more lenient sentence from Judge Kenny than what was offered as part of the plea and sentencing agreements that he rejected.

Moreover, even if Starks was misinformed by counsel in some way, he is not entitled to habeas relief. A trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea. *Ramos*, 170 F.3d at 565. The trial court conducted a sufficient colloquy as to the sentencing consequences of the plea. The court reviewed the charges and discussed the possibility of a maximum life sentence. The court verified that there was a plea agreement as to charges, but no sentencing agreement. In advising Starks of the rights that he would be giving up by entering his plea, the court advised him that he would be giving up any claim that his plea was the product of any undisclosed promises or threats. Starks raised no objection or concern at the time of his plea or sentencing. He fails to establish that his no contest plea is invalid or that trial counsel was ineffective. The Court is satisfied that Starks's plea was knowing, intelligent, and voluntary and that he received all the process he was due. Habeas relief is not warranted.

**ORDER**

The Court concludes that Starks is not entitled to federal habeas relief on the claim contained in his pleadings. Accordingly, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

Before Starks may appeal this decision, a certificate of appealability must issue.

*See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Having conducted the requisite review, the Court concludes that Starks fails to make a substantial showing of the denial of a constitutional right as to his claims. The Court, therefore, **DENIES** a certificate of appealability.

Lastly, the Court concludes that Starks should not be granted leave to proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a). Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.

**SO ORDERED**.

                                            s/Stephen J. Murphy, III
                                            STEPHEN J. MURPHY, III
                                            UNITED STATES DISTRICT JUDGE

Dated: December 12, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 12, 2017, by electronic and/or ordinary mail.

                                            s/David P. Parker
                                            DAVID P. PARKER
                                            david_parker@mied.uscourts.gov
                                            Case Manager